UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GRIMES,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:24-cv-845
Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for disability insurance benefits (DIB).

By way of background, an administrative law judge (ALJ) previously issued an unfavorable decision on October 25, 2017. PageID.39. Plaintiff filed an application for DIB on July 25, 2022, alleging a disability onset date of March 17, 2017. PageID.39. Plaintiff had past relevant work as sewer system cleaner. PageID.48. He listed his disabling conditions as panic attacks, anxiety, depression, attention deficit hyperactivity disorder (ADHD), and bipolar disorder. PageID.293. In the present case, an ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 15, 2024. PageID.39-50. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

I.     **LEGAL STANDARD**

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

3

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020. PageID.41. The ALJ also found that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of October 26, 2017[1] through his date last insured of December 31, 2020. PageID.42. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of major depressive disorder, bipolar disorder, intermittent explosive disorder, ADHD, generalized anxiety disorder, and a substance use disorder. *Id*. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, carry out, and remember simple instructions; is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line); is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

PageID.44. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.48.

---

[1] This is the day after plaintiff's previous unfavorable decision.

At the fifth step, the ALJ determined that, through the date last insured, plaintiff could perform a significant number of unskilled jobs at all exertional levels.. PageID.49-50. Based on the testimony of vocational expert (VE), the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as night cleaner (light work) (180,000 jobs), industrial cleaner (medium work) (160,000 jobs), and laundry worker (medium work) (35,000 jobs). PageID.49. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 26, 2017 (the amended alleged onset date) through December 31, 2020 (the date last insured). PageID.50.

### III. DISCUSSION

Plaintiff raised two errors with subparts.

**A. The residual functional capacity (RFC) is not supported by substantial evidence where the ALJ (1) failed to account for the variability from plaintiff's severe conditions on his ability to perform sustained work, and (2) failed to account for the effect of plaintiff's intermittent explosive disorder on his ability to respond appropriately to supervision.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. § 404.1545) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. § 404.1520(e)).

1.      **The cycling nature of plaintiff's conditions**

Plaintiff contends that the ALJ did not account for the waxing and waning nature of his Bipolar disorder II on his ability to perform sustained work. The ALJ noted that plaintiff "has a long history of mental health disorders beginning years prior to the amended alleged onset date" and that his "description of a repetitive cycle is reflected within the evidence of record." PageID.45. In addition, the ALJ noted plaintiff's struggles with medication, which include plaintiff "stopping medications of his own accord" and the fact he has experienced "many mental health medication changes," PageID.46. Taking these matters into account, the ALJ found that:

> While the evidence reveals a history of mental health disorders, the mental status examinations reveal the claimant frequently presented as pleasant, or cooperative and friendly; appropriately dressed and groomed; alert and oriented with normal to euthymic mood and affect; normal attention and concentration; and intact or good insight, memory, and judgment, throughout the period at issue and independent of medication compliance. (B2F/2, 8, 22, 28-29: B3F/2, 6, 11, 14, 17; B4F/20, 23; B8F/8: B10F/10, 29, 48; B20F/4-5, 12, 20, 24, 26, 28, 30-31, 37, 39, 42-43, 45, 47, 52, 55, 57, 64, 66; B21F/53; B27F/4, 6; B30F/3-4, 11, 24; B31F/5). However, as one would expect given the nature of the claimant's impairments, there were a few instances of mental status examination findings noting the claimant's irritability and anger; disheveled appearance; depressed or discouraged mood; flat, labile, or discouraged affect; and diminished ability to think, concentrate, and make decisions. (B2F/8; B7F/7; B20F/4, 42; B27F/6; B30F/24). Additionally, the claimant expressed concerns regarding his ability to handle stress, handle changes in routine, and interact with others. (B8E).

PageID.47. Given these findings, the Court concludes that the ALJ considered the cycling nature of plaintiff's mental condition. Accordingly, this claim of error should be denied.

2.      **Intermittent explosive disorder**

That being said, the Court concludes that the RFC did not account for plaintiff's severe impairment of "intermittent explosive disorder" and this condition's effect on plaintiff's ability to respond appropriately to supervisors. One Court has defined the diagnosis of "intermittent explosive disorder" as meaning that "a person has displayed repeated episodes of

6

aggressive violent behavior grossly out of proportion to a situation." *See Devoe v. Davis*, No. A-14-CA-151-SS, 2016 WL 5408169 at *43 (W.D. Tex. Sept. 27, 2016). Another Court referred to a diagnosis of intermittent explosive disorder as resulting in "explosive outbursts of anger and violence" *See T.C. v. New York State Department of Health*, No. 22-CV-5045 (MKV), 2022 WL 17689841 at *4 (S.D.N.Y. Dec. 15, 2022). While the ALJ found that plaintiff had a severe impairment of intermittent explosive disorder (PageID.42), the decision does not address how the violent behavior that accompanies this disorder affects plaintiff's ability to function in a work environment. In this regard, the narrative attached to the opinion of therapist Joseph Gardner states in part:

> Mr. Grimes is hypervigilant, although he does not typically have an exaggerated startle response, though it is probably that his exaggerated response is verbal rather than physical. If you startle and surprise him, he will come back with swearing. In work environments, Mr. Grimes told me that when he had issues at his employment, most of the time, he would blow up, state "F—you" and leave. Sometimes, his place of employment told him not to come back and one time, he left in a fairly neutral manner. In that situation, Mr. Grimes was having panic attacks when he arrived at work and could not go into work. His boss called and Mr. Grimes was able to state to him that he was having panic attacks. His boss understood but had to let Mr. Grimes go. Mr. Grimes indicated that had many jobs over the years, including 13 in one year.

PageID.1358.

In listing plaintiff's alleged disorders, the ALJ does not mention this severe impairment:

> The claimant alleged disability due to panic attacks, anxiety, depression, attention-deficit hyperactivity disorder, and bipolar disorder. (B1E/2). He reported that going out of the house causes more anxiety, he finds it stressful to be around people, and concentrating is hard because he gets angry, shaky, and sweaty. (B8E/1). He stated he completes his own personal care, but his wife reminds him, and he sets alarms on his phone for medication reminders. He said he and his wife share the responsibilities of caring for their son and preparing meals, and he completes laundry and dishes each week. The claimant noted that he can drive, but sometimes it is too much for him, and he does not like going out alone. He also reported that he handles his own finances, he has a hard time following instructions,

> and he does not get along well with other people. Additionally, he stated that his impairments make it difficult for him to talk, remember, complete tasks, concentrate, and understand. (B8E).

PageID.45.

As discussed, the ALJ found that plaintiff has a severe impairment which results in explosive outbursts of anger, violence and aggressive behavior which is grossly out of proportion to a situation. Nevertheless, in evaluating whether plaintiff has an impairment which meets the requirement of a listing, the ALJ found that plaintiff has only a moderate limitation in interacting with others:

> In interacting with others, the claimant had a moderate limitation. The claimant reported that it is stressful for him to be around others, he does not get along with people, and he testified that he does not interact with others, except his therapist and his wife. (B8E; Hearing Recording). However, mental status examinations consistently note the claimant was pleasant, or cooperative and friendly; and his dress and grooming were appropriate. (B2F/2, 8, 22, 28-29; B8F/8; B20F/5, 12, 24, 28, 30-31; B27F/4, 6; B30F/3, 11, 24; B31/5). Thus, the evidence supports no greater than moderate limitations in this functional area.

PageID.43.

The ALJ recognizes that plaintiff has limitations in dealing with other people. In this regard, the RFC limits plaintiff's interaction with others, stating that plaintiff should have "no transactional interaction with the public", that "the work itself should deal with things rather than people throughout a typical workday", and that plaintiff should have only "occasional interaction with co-workers and supervisors." PageID.44. However, in reaching this RFC, the ALJ did not address how plaintiff's severe impairment of "intermittent explosive behavior" significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c) (a "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities"). Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On

8

remand, the Commissioner should re-evaluate the limitations which arise from plaintiff's severe impairment of intermittent explosive behavior.

### B. The ALJ erred in his evaluation of medical opinion evidence.

Plaintiff contends that the ALJ rejected the opinion of plaintiff's treating therapist, Joseph Gardner, LPC, on the ground that Gardner's opinion was not consistent with the overall evidence of record. For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §404.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. §404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency". 20 C.F.R. §404.1520c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §404.1520c(c)(1). The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

9

the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §404.1520c(c)(2).

The ALJ addressed Mr. Gardner's opinion as follows:

> The claimant's therapist, Joseph Gardner, LPC, submitted a mental source statement and supporting letter in December 2023. Mr. Gardner opined the claimant's symptoms seriously affect his ability to complete nearly all vocational functions. Additionally, he opined the claimant has significant distress and impairment with social functioning that greatly hampers his ability to function vocationally, because his anger and language make it difficult for him to find acceptance and to be accepting. He also opined the claimant would be off task more than 10% of an eight-hour workday and would likely miss more than two workdays per month. (B28F). The undersigned finds Mr. Gardner's opinion unpersuasive. Mr. Gardner supported his opinion with reference to his own findings from their counseling sessions; however, his opinion is not consistent with the overall evidence of record, which regularly details normal or intact mental status examination findings, as detailed above.

PageID.48.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).

Here, the ALJ's evaluation is inadequate because it does not set forth any particular basis for finding that any particular portion of Mr. Gardner's opinion is unpersuasive. The Court recognizes that other portions of the ALJ's opinion include citations from plaintiff's nearly 1,000 pages of medical records. *See* Exhibits 17F-B31F, PageID.448-1425. However, the ALJ did not address how any of those records failed to support any particular limitation set forth in Mr.

Gardner's opinion. The ALJ's statement that Gardner's opinion "is not consistent with the overall evidence of record" does not articulate an analysis of the evidence to allow the appellate court to trace the path of his reasoning. Accordingly, the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Mr. Gardner's opinion.

### IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) re-evaluate the limitations which arise from plaintiff's severe impairment of intermittent explosive behavior, and (2) re-evaluate Mr. Gardner's opinion.

Dated: August 19, 2025                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).